DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CITIZENS PROPERTY INSURANCE CORPORATION,**
Appellant,

v.

**BLACK DIAMOND FUNDING VENTURES, LLC** a/a/o **QUALITY ASSESSMENTS & LOGISTICS, LLC,** a/a/o **DWAYNE STRONG,**
Appellee.

No. 4D2024-2535

[June 3, 2026]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Kathleen Mary McHugh, Judge; L.T. Case No. 062023SC008496AXXXCE.

Lara Judith Edelstein of Boyd & Jenerette, P.A., Boca Raton, for appellant.

Shannon Kain of Hicks Porter & Stein, P.A., Miami, and Hailey Lampert Wilson of Law Offices of Rina Feld, Boca Raton, for appellee.

CIKLIN, J.

This appeal was taken from a final judgment entered for the appellee as the parties agreed, with the appellant reserving the right to appeal the denial of its motion for summary judgment. The appeal turns on whether the downstream transfer of post-loss insurance benefits from a service provider to an entity that purchases accounts receivable constitutes an "assignment agreement" under section 627.7152, Florida Statutes (2019).[1] We hold that it does, and we reverse.

The appellant, Citizens Property Insurance Corporation ("Citizens"), issued a homeowner's insurance policy to the homeowner. The homeowner executed a written assignment of its benefits under the policy

---

[1] The version of the statute in effect from July 1, 2019 to May 25, 2022 applies to this case. The current version of the statute bars assignment agreements involving policies issued on or after January 1, 2023. *See* § 627.7252(2)(a)1., Fla. Stat. (2022).

("Assignment") in favor of a service provider, Quality Assessments & Logistics, LLC ("QAL"). Via a written agreement ("Purchase Agreement"), QAL transferred its right to payment for services performed or that it contracted to perform—and the right to sue—to the appellee, Black Diamond Funding Ventures, LLC ("Black Diamond"), a business which buys receivables from servicing companies and pursues payment for the outstanding balance. After Black Diamond was unsuccessful in obtaining Citizens' payment, Black Diamond sued Citizens for breach of the insurance policy, relying on the Assignment, Purchase Agreement, and QAL's services invoice.

The question here is whether section 627.7152 regulates not only the initial insured-to-contractor assignment, but also subsequent transfers of post-loss benefits. Section 627.7152 "regulates certain assignment agreements 'seek[ing] to transfer insurance benefits from the policyholder to a third party.'" *Adjei v. First Cmty. Ins. Co.*, 352 So. 3d 900, 903 (Fla. 3d DCA 2022) (alteration in original) (quoting *Total Care Restoration, LLC v. Citizens Prop. Ins. Corp.*, 337 So. 3d 74, 76 (Fla. 4th DCA 2022)). "The statute applies to any assignment of post-loss benefits 'to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property[.]'" *Id.* (quoting § 627.7152(1)(b), Fla. Stat. (2019)). "For an 'assignment agreement' to be valid and enforceable, it must meet specific statutory requirements." *Ellis v. Titan Restoration Constr., Inc.*, 408 So. 3d 776, 778 (Fla. 4th DCA 2025); *see also* § 627.7152(2)(d), Fla. Stat. (2019) ("An assignment agreement that does not comply with this subsection is invalid and unenforceable."). An "assignee" is "a person who is assigned post-loss benefits through an assignment agreement." § 627.7152(1)(a), Fla. Stat. (2019). An "assignor" is "a person who assigns post-loss benefits under a residential property insurance policy . . . to another person through an assignment agreement." § 627.7152(1)(c), Fla. Stat. (2019).

Section 627.7152 defines "assignment agreement" as "any instrument by which post-loss benefits under a residential property insurance policy . . . are assigned or transferred, or acquired in any manner, in whole or in part, to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further damage to the property." § 627.7152(1)(b), Fla. Stat. (2019). This broad and "expansive" definition can be broken down into three parts: "(1) *any* instrument (2) by which post-loss insurance benefits are acquired in *any* manner (3) to or from a person providing services to protect, repair, restore, or replace property or to mitigate against further property damage." *Holding Ins. Cos. Accountable, LLC v. Am. Integrity Ins. Co. of Fla.*, 399 So. 3d 1232, 1234 (Fla. 5th DCA 2025).

2

Here, no one disputes that the Purchase Agreement is an "instrument," "from a person providing services." The parties dispute whether Black Diamond, by the Purchase Agreement, was assigned, transferred, or acquired "in any manner" "post-loss benefits." If the Purchase Agreement qualifies as an assignment agreement subject to section 627.7152, then the Purchase Agreement does not meet the statute's requirements.

The record shows that Black Diamond "acquired" "post-loss benefits," as the agreement provides: "direct payment to [Black Diamond] from the insurance company"; Black Diamond "has the right to . . . bring suit or otherwise enforce collection in the name of the Service Provider/Insured(s)"; and the agreement terminates upon Black Diamond's "receipt of the full payment of [purchased] invoices . . . from the insurance company for such services rendered." Thus, the agreement is an "assignment agreement" as defined in section 627.7152.

Black Diamond cites *Adjei* for the proposition that the statute is directed only to assignments from an insured to a service provider or from a service provider to another service provider. But *Adjei* does not contain such a holding. Rather, *Adjei* recognized that because the assignment in that case provided the assignees would maintain the property, the assignment was encompassed by section 627.7152. 352 So. 3d at 904.

We recognize that several provisions of section 627.7152 appear directed toward assignees actually performing work on the property, including provisions concerning estimates, performance of work, and revised scopes of work. However, the Legislature chose expansive language in defining "assignment agreement," including the words, "any instrument" by which benefits are "acquired in any manner" "to or from a person providing services." The fact that certain statutory requirements may fit imperfectly in the context of a downstream financial entity does not permit narrowing the statutory definition where the entity has acquired the right to collect and enforce post-loss policy benefits. Rather, under the statutory framework, a noncompliant assignment agreement is rendered invalid and unenforceable.

In sum here, because the Purchase Agreement qualifies as an "assignment agreement" subject to section 627.7152, yet fails to comply with section 627.7152, the agreement is invalid and unenforceable, and Black Diamond thus lacked standing to sue Citizens. We reverse and remand for entry of summary judgment for Citizens. Based on our holding, the other arguments raised on appeal are moot.

*Reversed and remanded.*

GROSS and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***